# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| KEVIN BUTENHOFF, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No: 4:22-CV-323-JAR |
| vs. ) | |
| ) | |
| ST. LOUIS COUNTY, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Exclude (ECF No. 49), Motion to Strike (ECF No. 58), and Motion for Summary Judgment. ECF No. 54. As explained below, the Court will grant Defendants' Motion for Summary Judgment and deny their remaining motions as moot.

## BACKGROUND

Plaintiff Kevin Butenhoff brings this action against Defendants St. Louis County, Chief of Police Jon Belmar, Sergeant Craig Kriska, Officer Frankie Haus, and Officer Michael Andrew for alleged violations of his constitutional and statutory rights during his March 2019 arrest.[1] In Count I, Butenhoff alleges that Kriska, Haus, and Andrew used excessive force in violation of the Fourth Amendment. In Count II, he alleges that the County's failure to properly train its officers caused the excessive force. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Finally, in Count III, Butenhoff alleges that the officers assaulted and battered him in violation of Missouri law.

---

[1] Butenhoff also named "Kevin Whitehead" and Susan Doherty as Defendants, but the Court dismissed claims against those officers in November 2022 for lack of timely service under Federal Rule of Civil Procedure 4(m). ECF No. 21.

On February 26, 2024, Defendants filed a motion for summary judgment, arguing that the individual officers are entitled to qualified and official immunity because their uses of force were objectively reasonable under the circumstances. To support their motion, Defendants filed a Statement of Uncontroverted Material Facts ("SUMF") with accompanying exhibits, which primarily consist of the officers' deposition testimony describing the altercation with Butenhoff. On March 27, 2024, Butenhoff filed an opposition memorandum and a "Response to Defendants' [SUMF]," but the title of that filing is a bit of misnomer. ECF No. 62. Local Rule 4.01(E) requires a response to a SUMF to "set forth every relevant fact as to which the party contends a genuine issue exists" with "the paragraph number from the moving party's [SUMF]" and "specific citations to the record, where available, upon which the opposing party relies." Butenhoff's "Response" did not meet any of these requirements; it merely set forth Butenhoff's own statements of fact. Butenhoff did not move to file a separate response to Defendants' SUMF, nor did he seek leave to do so after Defendants explained the shortcomings of Butenhoff's Response in their reply. ECF No. 65.

Because "[a]ll matters set forth in the moving party's [SUMF] shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party," and Butenhoff failed to controvert any of Defendants' statements of fact, the Court must deem the matters set forth in Defendants' SUMF admitted for purposes of the present motion.[2] The undisputed facts on this record are as follows.

---

[2] The failure of Butenhoff's counsel, Jaime Santana, Jr., to comply with the Court's Local Rules on SUMFs is both surprising and concerning. In another recent case before the Court, Mr. Santana violated the same requirements in precisely same way: his client's response to the defendants' SUMF failed to specify the disputed statements of fact with paragraph numbers and citations to the record. On January 31, 2024, the Court granted summary judgment against Mr. Santana's client, at least in part because the Court was required to deem the defendants' SUMF admitted for the purposes of their motion. *Cockrell v. Bowersox*, No. 4:21-CV-01260-JAR, 2024 WL 358085 (E.D. Mo. Jan. 31, 2024). The Court's order explained the shortcomings of Mr. Santana's response and the consequences to his client with supporting quotations from the Local Rules. *Id.* at 1. It is difficult to understand why, not even two full months later, Mr. Santana violated the same local rule in the same way before

2

Around noon on March 19, 2019, Butenhoff entered a Title Premiere in St. Louis County and began walking towards the rear of the business.  When an employee confronted him, Butenhoff began screaming slurred and incoherent words and ran out the rear doors.  The employees watched him run into the basement of a nearby apartment complex and called the police.  While they waited for officers to arrive, they heard Butenhoff continue screaming in what sounded like a fight or argument with another person.

Officer Andrew and Officer Bradley Murray[3] were the first to arrive at the scene.  They also heard Butenhoff screaming, seemingly at another person, as well as loud banging coming from the basement.  They could not determine the source of the noise or whether Butenhoff was alone because there were no windows to the basement and the only point of entry and exit was a locked door.  Unsure of the situation inside, the officers called for assistance from additional officers and a supervisor.  In the meantime, Murray talked to residents of the apartment complex to see if anyone knew the person inside the basement while Andrew stood guard outside the basement door.

Sergeant Kriska and Officers Haus, Whiteside, and Doherty were next to arrive.  After spending roughly twenty to thirty minutes trying to coax Butenhoff out of the basement, they attempted to enter with a key from apartment manager, but the door could not be fully opened because Butenhoff had barricaded it with pallets and debris.  The officers could peer inside through the sliver between the ajar door and its frame, but the basement was dark and hazy from the fumes of a recently used fire extinguisher.[4]  The officers left the door ajar to allow the haze

---

the same judge in a case asserting the same causes of action and with the same deleterious consequences to his client.

[3] Murray has never been named as a Defendant in this lawsuit.

[4] Butenhoff testified that there was a fire extinguisher in the basement but he did not intentionally set it off. ECF No. 62-1 at 42.

3

to dissipate, and Kriska retrieved a flashlight.  When he returned, he could see Butenhoff in a back corner of the room with something in his right hand and something wrapped around his neck.

While waiting for the fumes from the fire extinguisher to dissipate further, Kriska developed a plan for the officers to enter the basement.  From Butenhoff's screaming, banging, and general unresponsiveness, Kriska determined that the circumstances in the basement could escalate quickly.  He accordingly assigned each officer a weapon of varying lethality to respond to the different threat levels they might encounter: Officer Murray would have a riot shield, Officer Haus would have a "less-than-lethal" beanbag shotgun, Officer Andrew would have a taser, Officer Whiteside would have a handgun, and Kriska would attempt to persuade Butenhoff to leave peacefully.  In case he was unable to do so, Kriska preemptively requested an ambulance and the fire department to come to the scene.

When they were ready to execute the plan, the officers kicked down the basement door and cleared the obstructing debris and pallets.  Upon entry, the officers saw that the floor was wet and covered with residue from the fire extinguisher.  They could also see that a water heater and pipes where Butenhoff was standing had been damaged and were leaking water.  Kriska, Haus, Whiteside, and Andrew saw a pipe or some sort of weapon in one of Butenhoff's hands and a rope in the other.  And Officer Haus testified that Butenhoff began wrapping the rope or wire around his neck when the officers entered.

As Kriska attempted to communicate with Butenhoff, Butenhoff continued to wrap the rope around his neck and yelled things like, "Just shoot me," and "Kill me." ECF No. 55 at 10.  When Butenhoff failed to comply with Kriska's commands and "it became clear that [Butenhoff] was not meaningfully engaging in communication," Kriska directed Haus to fire the beanbag

4

shotgun. *Id.* at 11. Haus then fired two shots. After the first shot, Butenhoff took one or two steps backward but remained on his feet and still did not comply with Kriska's orders. After the second shot, Butenhoff charged at the officers with the pipe over his head. Murray moved forward to block Butenhoff with the riot shield, but he slipped on the water and fire extinguisher foam. Kriska, without any weapons or means of stopping Butenhoff, tried to shelter himself. Haus fired a third beanbag round, but Butenhoff continued to charge towards Andrew and Whiteside. Andrew fired his taser at Butenhoff and, when Butenhoff did not slow down, fired another. Whiteside fired his gun nearly simultaneously with Andrew's second use of the taser, and Butenhoff finally fell to the ground. Because an ambulance was waiting at the scene, he was quickly rushed to the hospital where he underwent surgery for his gunshot wound. Butenhoff later testified that he remained in a coma for seven days following the altercation.

## LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of demonstrating there are no genuine issues of material fact rests on the moving party, and the Court considers the evidence and reasonable inferences in the light most favorable to the non-moving party. *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015). To avoid summary judgment, the non-movant must demonstrate the existence of specific facts supported by sufficient probative evidence that would permit a finding in his favor on more than speculation. *Donathan v. Oakley Grain, Inc.*, 861 F.3d 735, 739 (8th Cir. 2017). Where the record as a whole

5

could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

### A. Count I – Excessive Force in Violation of the Fourth Amendment

In Count I, Butenhoff asserts a 42 U.S.C. § 1983 excessive force claim against Kriska, Haus, and Andrew in their individual and official capacities.[5] Defendants argue they are entitled to summary judgment because their uses of force were reasonable and they are entitled to qualified immunity.

Qualified immunity "shields government officials from liability when their conduct does not violate clearly established constitutional rights of which a reasonable person would have known." *Ivey v. Audrain Cnty.,* 968 F.3d 845, 848 (8th Cir. 2020) (quoting *Thiel v. Korte*, 954 F.3d 1125, 1128 (8th Cir. 2020)).  Courts consider two factors when evaluating an assertion of qualified immunity: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009).  "The plaintiff bears the burden of proving that the law was clearly established." *Hess v. Ables*, 714 F.3d 1048, 1051 (8th Cir. 2013) (citation omitted).  And a right is clearly established if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

To demonstrate a violation of his Fourth Amendment right against unreasonable seizure, Butenhoff must show that "the amount of force used by the officers was objectively

---

[5] Butenhoff's complaint brings Count I "Against All Defendants," but Chief of Police Belmar is not alleged to have even been present for the alleged conduct, and a municipality is not vicariously liable for the actions of its employees under 42 U.S.C. § 1983.

6

unreasonable under the particular circumstances." *Baude v. Leyshock*, 23 F.4th 1065, 1073 (8th Cir. 2022). To determine whether a use of force was unreasonable, the Court balances "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Relevant factors in this analysis include (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," or (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight. *Mitchell v. Kirchmeier*, 28 F.4th 888, 898 (8th Cir. 2022) (quoting *Graham*, 490 U.S. at 396). The Eighth Circuit has provided additional guidance on the reasonability of deadly force, stating, " 'absent probable cause' for an officer to believe the suspect poses 'an immediate threat of death or serious bodily injury' to others, 'use of deadly force is not objectively reasonable.' " *Cole ex rel. Richards v. Hutchins*, 959 F.3d 1127, 1132 (8th Cir. 2020) (quoting *Billingsley v. City of Omaha*, 277 F.3d 990, 993 (8th Cir. 2002)). However, there is no "magical on/off switch that triggers rigid preconditions whenever an officer's actions constitute 'deadly force[,]' " *Scott v. Harris*, 550 U.S. 372, 382 (2007), and the objective reasonableness of the deadly force remains the object of the Court's inquiry.

Defendants argue that their uses of force were reasonable because they had probable cause to believe Butenhoff posed a threat to their safety when he charged towards them with a pipe in hand. Butenhoff denies that he had any weapon in his hand, that he "charged" at the officers, or that he threatened Defendants in any way. But again, as stated above, Butenhoff failed to controvert Defendants' statements of facts on these matters, and the Court must accordingly treat Defendants' assertions as admitted. These assertions include that Butenhoff had a pipe in his hand (ECF No. 55 at 10); that Butenhoff became more and more agitated while

Kriska attempted to communicate with him (*Id.* at 11); that Butenhoff would not comply with Kriska's requests to put the pipe down and "just go down to the ground" (*Id.*); that Butenhoff was not meaningfully engaging in communication (*Id.*); and that he "continued to act in a manner that suggested he would harm the Officers or self-harm[.]" *Id.*

Based on this record, the Court agrees with Defendants that when Butenhoff charged at the officers, they reasonably believed that Butenhoff posed an immediate threat of serious bodily harm to them, and it was therefore reasonable for them to use deadly force. *See Tennessee v. Garner*, 471 U.S. 1, 11 (1985) ("Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by deadly force."). Accordingly, Andrew and Haus's uses of force after Butenhoff charged at them were not excessive under the Fourth Amendment. The Court also notes that Whiteside was the only officer that fired a handgun, and that occurred only after Butenhoff charged at the officers. The Court dismissed Whiteside from this action because Butenhoff failed to timely serve him as required by Federal Rule of Civil Procedure 4(m). Butenhoff has never sought to add him back into the case.

At issue for the Court, then, is whether it was reasonable for Haus to shoot Butenhoff with two beanbag rounds *before* he charged at the officers. Butenhoff argues that it was not reasonable because beanbag munitions, though frequently referred to as "less-than-lethal" or "less-lethal," can be deadly when fired within 15 feet of the target. Moreover, at the time Haus shot him, Butenhoff was not suspected of committing a serious crime and, according to Butenhoff, was not posing a threat to the officers' safety. Butenhoff accordingly reasons that Haus's use of deadly force was unreasonable as a matter of law. *See Mitchell v. Kirchmeier*, 28

8

F.4th 888, 898 (8th Cir. 2022) (allegations that beanbag rounds fired from short range at peaceful protestor's face sufficient to defeat defendants' assertion of qualified immunity).

Butenhoff's argument fails because there is no evidence in the summary judgment record that might indicate that Haus's deployment of the beanbag munitions constituted deadly force. Deadly force is "such force that creates a substantial risk of causing death or serious bodily harm." *Church v. Anderson*, 249 F.Supp.3d 963, 968 (N.D. Iowa 2017). Whether a particular use of beanbag rounds meets this standard is a fact-specific question turning on the totality of the circumstances. *See Anderson v. Avond*, 631 F.Supp.3d 721, 732 (D. Minn. 2022) (citing *Ludwig v. Anderson*, 54 F.3d 465, 473 (8th Cir. 1995); *see also Omdahl v. Lindholm*, 170 F.3d 730, 733 (7th Cir. 1999). In this analysis, courts have considered (1) the specifications of the weapon, (2) the shooter's distance from the target, and (3) where the shooter was aiming. *Anderson*, 631 F.Supp.3d at 730-33 (collecting cases). Butenhoff has not adduced evidence regarding any of these factors. He has not explained what weapon Haus used, how far away Haus was when he fired the beanbag rounds, where Haus was aiming, where Butenhoff was hit, and even whether the beanbags caused any injuries. *See Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011) ("The degree of injury is certainly relevant insofar as it tends to show the amount and type of force used."). Butenhoff has therefore failed to create a genuine dispute of material fact that Haus's deployment of the beanbag gun created "a substantial risk of causing death or serious bodily harm." *Church*, 249 F.Supp.3d at 968.

The totality of the circumstances show that the use of the beanbag rounds was reasonable. At the time Haus shot Butenhoff, Butenhoff had barricaded himself in a basement, was yelling, and appeared to have broken several pipes and set off a fire extinguisher. When the officers entered the basement, Butenhoff began wrapping a wire or rope around his neck and had what

the officers believed was a weapon in his hand. ECF No. 55 at 10. He refused to drop the weapon or go to the ground. *Id.* at 11. And he "continued to act in a manner that suggested he would harm the Officers or self-harm." *Id*. On these facts, it was reasonable for Haus and Kriska to believe that Butenhoff threatened their safety to the extent that use of beanbag rounds was justified.

Accordingly, the summary judgment record, even when viewed in the light most favorable to Butenhoff, does not evince any violation of his Fourth Amendment rights. The Defendants are accordingly entitled to qualified immunity on Count I.

### B. Count II – *Monell* Liability

In Count II, Butenhoff asserts a § 1983 municipal liability claim against the County and Chief Belmar for causing the individual Defendants' uses of excessive force. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). The Eighth Circuit "has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim. Similarly, to maintain an action for training or supervisory liability, a plaintiff must show the failure to train or supervise caused the injury." *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 849 (8th Cir. 2011) (internal citations omitted). Because Butenhoff has not shown a violation of his constitutional rights, his municipal liability claim must fail. The Court will accordingly grant summary judgment for the County and Chief Belmar on Count II.

### C. Count III – Assault and Battery

In Count III, Butenhoff alleges that the individual Defendants assaulted and battered him under Missouri law. Defendants claim that they are entitled to official immunity. "Under Missouri law, the official immunity doctrine protects public officials from liability for injuries

10

arising out of their discretionary acts or omissions." *Reasonover v. St. Louis Cty., Mo.*, 447 F.3d 569, 585 (8th Cir. 2006). It does not apply, however, to discretionary acts done in bad faith or with malice. *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 446 (Mo. 1986). Because "a police officer's decision to use force in the performance of his duties is discretionary," *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015), Defendants are entitled to official immunity unless there is a genuine dispute that Defendants acted with bad faith or malice.

"The relevant definition of bad faith or malice in this context ordinarily contains a requirement of actual intent to cause injury." *State ex rel. Twiehaus*, 706 S.W.2d at 443. Butenhoff has not created any genuine dispute of fact that Defendants acted with an actual intent to cause injury. On the contrary, the undisputed evidence shows that Defendants' uses of force were reasonable, that they attempted to temper the force used, and that they took precautions to ensure that Butenhoff could quickly receive medical attention. Moreover, the only two officers in this action who shot Butenhoff fired beanbag rounds and a taser, and there is no evidence in the summary judgment record that these munitions caused more than *de minimis* injuries. Defendants are accordingly entitled to official immunity and summary judgment on Count III.

### D. The Remaining Motions

That leaves two pending motions remaining: Defendants' Motion to Exclude Plaintiff's Expert Witnesses (ECF No. 49) and Defendants' Motion to Strike Response in Opposition to Motion. ECF No. 58. In their motion to exclude, Defendants argue that Butenhoff violated Federal Rule of Civil Procedure 26(a)(2)(B) by failing to timely disclose his experts' reports. In their Motion to Strike, they argue that Butenhoff's "Response to Defendants' SUMF" should be stricken because, as explained above, his response violates the Court's Local Rules.

Butenhoff did not respond to Defendants' Motion to Strike, and the deadline to do so has passed. However, the Court notes that motions to strike are properly directly only to pleadings, and a response to a SUMF is not a pleading. *See* Fed. R. Civ. P. 26(f). Butenhoff did oppose Defendants' Motion to Exclude, but he does not dispute that he failed to timely provide his experts' reports; instead, he points to his compliance with other expert disclosure requirements. *Id.* at 1. Butenhoff's compliance with these other requirements is insufficient because an expert disclosure "must be accompanied by a written report—prepared and signed by the witness[.]" Fed. R. Civ. P. 26(a)(2)(B). Nevertheless, the Court will deny both motions as moot because Defendants are entitled to summary judgment on each of Butenhoff's claims.

## CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment will be granted, and Defendants' remaining motions will be denied as moot. The Court will enter a separate judgment in accordance with this order.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [ECF No. 54] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Exclude [ECF No. 49] and Motion to Strike [ECF No. 58] are **DENIED** as moot.

Dated this 29th day of May 2024.

                                                          /s/ John A. Ross
                                                          JOHN A. ROSS
                                                          UNITED STATES DISTRICT JUDGE